UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| CINCINATTI INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:17-cv-00036 |
| | ) | Judge Aleta A. Trauger |
| TRAVIS ORTEN, d/b/a TRAVIS ORTEN | ) | |
| SUPER SUDS CAR WASH & LAUNDRETTE, | ) | |
| MICHAEL FORRESTER, WILLIAM MILES, | ) | |
| THE ESTATE OF JACOB ORT, by and | ) | |
| through his Administrator, BRENDA L. | ) | |
| NALIBOFF, and THE ESTATE OF KENDRA | ) | |
| LEE, by and through her Administrator, | ) | |
| SHEILA LEE, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM & ORDER

Pending before the court is a Joint Motion to Dismiss (Docket No. 43), filed by the defendants, Travis Orten, d/b/a Travis Orten Super Suds Car Wash & Launderette, Michael Forrester, William Miles, the Estate of Jacob Ort, by and through his Administrator, Brenda Naliboff ("Ort"), and the Estate of Kendra Lee, by and through her Administrator, Sheila Lee ("Lee"), to which the plaintiff, Cincinnati Insurance Company ("Cincinnati"), has filed a response (Docket. No. 46). For the reasons discussed herein, the motion will be denied.

## FACTS & PROCEDURAL HISTORY

Cincinnati is an insurance company based and incorporated in Ohio. On June 23, 2015, Cincinnati issued separate Business Auto and Commercial Umbrella Liability coverage policies (the "Policies") to Travis Orten Super Suds Car Wash, a Tennessee car wash business owned and operated by Travis Orten. The Policies ran through June 23, 2016, and included coverage of an

1

automobile registered to Travis Orten Super Suds Car Wash.  In relevant part, the Policies provided coverage for the registered automobile as follows:

> A. Coverage
>
> We will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto'.
>
> We will also pay all sums an 'insured' legally must pay as a 'covered pollution cost or expense' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of covered 'autos'. However, we will only pay for the 'covered pollution cost or expense' if there is either 'bodily injury' or 'property damage' to which this insurance applies that is caused by the same 'accident'.
>
> We have the right and duty to defend any 'insured' against a 'suit' asking for such damages or a 'covered pollution cost or expense'. However, we have no duty to defend any 'insured' against a 'suit' seeking damages for 'bodily injury' or 'property damage' or a 'covered pollution cost or expense' to which this insurance does not apply. We may investigate and settle any claim or 'suit' as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

The Policies also provided commercial umbrella liability coverage as follows:

> SECTION I – COVERAGE
> A.  Insuring Agreement
>
> 1. We will pay on behalf of the insured the 'ultimate net loss' which the insured is legally obligated to pay as damages for 'bodily injury', 'personal and advertising injury' or 'property damage' to which this insurance applies:
>
>    a. Which is in excess of the 'underlying insurance'; or
>    b. Which is either excluded or not insured by 'underlying insurance'.
>
> 2. This insurance applies to 'bodily injury', 'personal and advertising injury' or 'property damage' only if:
>
>    a. The 'bodily injury', 'personal and advertising injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'; and

2

> b. The 'bodily injury' or 'property damage' occurs during the policy
> period shown in the Declarations; or
> c. The 'personal and advertising injury' results from an 'occurrence'
> that takes place during the policy period shown in the Declarations;
> and
> d. Prior to the 'coverage term' in which 'bodily injury' or 'property
> damage' occurs, or a 'personal and advertising injury' offense is
> committed, you did not know, per Paragraph 5. [sic] below, that the
> 'bodily injury' or 'property damage' had occurred or had begun to
> occur, in whole or in part, or that the 'personal and advertising injury'
> offense had been committed or had begun to be committed, in whole
> or in part.

For both the auto and umbrella coverage, the Policies provide exclusions for intentional or criminal acts.

Early in the morning of July 4, 2015, Orten—while driving the vehicle covered by the Policies—was involved in a fatal car crash with a vehicle driven by Forrester, in which Ort, Lee, and Miles were passengers. Ort and Lee died as a result of injuries sustained in the crash, and Miles suffered non-fatal injuries. Soon thereafter, Orten submitted a claim to Cincinnati for coverage of the crash. On July 15, 2016, Ort's representative filed suit in Kentucky state court against Orten and Forrester, alleging that their gross negligence caused the crash and seeking associated damages. Later that month, a Kentucky grand jury indicted Orten on two counts of murder and two counts of assault, amongst other charges, stemming from his role in the July 4, 2015 crash. On August 22, 2016, Cincinnati agreed to defend Orten in the civil action brought by Ort's representative, under a full Reservation of Rights. Cincinnati has retained counsel for Orten and is currently providing a defense in that case. On October 24, 2016, Orten was convicted by a Kentucky jury of two counts of reckless homicide, two counts of fourth degree assault, and other associated charges. Criminal judgment was entered against him on January 6, 2017.

On January 10, 2017, Cincinnati filed this action seeking declaratory judgment that it has no coverage obligation under the Policies for the claims made against Orten in the Ort complaint, or for any other claims related to the July 4, 2015 crash. (Docket No. 1.) Cincinnati seeks further declaration that it has no duty to indemnify Orten in the Ort action or in any other action related to the July 4, 2015 crash and that it is entitled to withdraw from its defense of Orten provided under Reservation of Rights. On January 25, 2017, Lee's representative filed suit against Orten and Forrester in Kentucky state court for damages related to Lee's death. On February 15, 2017, an Amended Complaint was filed in the Ort action, adding Cincinnati as a defendant and seeking declaratory judgment from the state court that Cincinnati owes coverage and a duty to indemnify Orten under the Policies for actions arising from the July 4, 2015 crash. On March 31, 2017, Orten filed a crossclaim for a declaration of rights in the Ort lawsuit, also seeking a declaration from the state court that the Policies require Cincinnati to cover and indemnify Orten for actions arising from the July 4, 2015 crash. On April 20, 2017, Miles filed suit against Orten, Forrester, and his personal insurance provider, seeking damages related to injuries he sustained in the July 4, 2015 crash.

On July 15, 2017, the defendants moved to dismiss Cincinnati's action in this court, arguing that judicious considerations related to the ongoing, parallel litigation in Kentucky state court counsel declination of jurisdiction here. (Docket No. 43.) On August 11, 2017, Cincinnati filed a response. (Docket No. 46.) Cincinnati contends that the Kentucky state court litigation does not preclude this court from determining its legal obligations to Orten under the Policies.

## **LEGAL STANDARD**

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may

declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995); *see also Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942). The Supreme Court has "repeatedly characterized the Declaratory Judgment Act as an enabling Act, which confers discretion on the courts rather than an absolute right upon the litigant." *Wilton*, 515 U.S. at 287 (internal citations omitted). The Court has further explained that the broad discretion given to district courts includes an alternative to dismissal; accordingly, district courts may also enter a stay of the federal action, pending resolution of the state court proceeding. *Brillhart*, 316 U.S. at 495; *Wilton*, 515 U.S. at 282–83 (discussing *Brillhart* and appropriate inquiry for whether or not to enter a stay or to dismiss a declaratory judgment at the outset). Accordingly, this court has broad discretion with respect to whether or not to exercise jurisdiction over Cincinnati's action or to otherwise stay the action during the pendency of the underlying tort actions.

The Sixth Circuit has established guidelines for district courts deciding whether or not to exercise discretionary jurisdiction over a declaratory relief action. "In determining the propriety of entertaining a declaratory judgment action, competing state and federal interests weigh in the balance, with courts particularly reluctant to entertain federal declaratory judgment actions premised on diversity jurisdiction in the face of a previously-filed state-court action." *Adrian Energy Assocs. v. Mich. Public Serv. Comm'n*, 481 F.3d 414, 421 (6th Cir. 2007). In insurance cases (like this one), the Sixth Circuit has frequently held that "declaratory judgment actions seeking an advance opinion on indemnity issues are seldom helpful in resolving an ongoing

action in another court." *Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Ins. Co.*, 791 F.2d 460, 463 (6th Cir. 1986); *see also Travelers Indem. Co. v. Bowling Green Prof. Assocs.*, PLC, 495 F.3d 266, 273 (6th Cir. 2007). The Sixth Circuit has further "question[ed] the need for declaratory judgments in federal courts when the question is one of state law and when there is no suggestion that the state court is not in a position to define its own law in a fair and impartial manner." *Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 816–17 (6th Cir. 2004). Accordingly, generally, "[s]uch actions ... should normally be filed, if at all, in the court that has jurisdiction which gives rise to the indemnity problem. Otherwise confusing problems of scheduling, orderly presentation of fact issues and res judicata are created." *Manley*, 791 F.2d at 463; *see also Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 967 (6th Cir. 2000). However, there is no *per se* rule to prevent district courts from exercising jurisdiction over declaratory judgment actions related to insurance relationships and relevant exceptions to coverage. *Roumph*, 211 F.3d at 967; *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1066 (6th Cir.1987).

Accordingly, courts routinely engage in detailed case-specific inquiries when deciding whether or not to exercise jurisdiction over declaratory judgment actions such as this one. To guide district courts in their decision-making, the Sixth Circuit has articulated five factors for consideration:

(1) whether the declaratory action would settle the controversy;

(2) whether the declaratory action would serve a useful purpose in clarifying the legal relations at issue;

(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;"

(4) whether the use of a declaratory judgment action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and

6

(5) whether there is an alternative remedy that is better or more effective.

*Grand Trunk v. W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984).

## ANALYSIS

The defendants ask that the court decline to exercise its discretionary jurisdiction over this action. Specifically, they argue that, pursuant to the five factors of consideration articulated by the Sixth Circuit in *Grand Trunk*, an exercise of jurisdiction would be inappropriate because Kentucky law governs the core aspects of the dispute, and there remain critical, unresolved factual determinations that are better left to the Kentucky state court. The court will analyze each *Grand Trunk* factor individually as it applies to Cincinnati's request for declaratory relief.

**A. Will the declaratory action settle the controversy?**

The Sixth Circuit has wavered on how to treat this factor in insurance cases. In *Scottsdale Ins. Co. v. Flowers*, the court addressed its divergent approaches:

> Two lines of precedent seem to have developed in our jurisprudence regarding consideration of this first factor in the context of an insurance company's suit to determine its policy liability. . . . The difference between these lines of cases appears to rest on the competing policy considerations of consolidating litigation into one court versus permitting a party to determine its legal obligations as quickly as possible.

*Scottsdale*, 513 F.3d at 555 (internal citations omitted). The *Scottsdale* court noted that factual considerations also helped explain the different lines of cases and concluded, on review, that the district court had adequately resolved all controversies between the parties "because the only controversy between them regarded the scope of the insurance policy." This court finds that approach persuasive. Although there are relevant factual distinctions between the instant case and *Scottsdale*—for example, the plaintiff insurance company in that case was not a party to the state court action, unlike Cincinnati—they do not render this court unable to resolve the issue of

7

what coverage, if any, Cincinnati owes to Orten under the Policies. As in *Scottsdale*, this is the only live issue between Cincinnati and any of the defendants.

The court is also cognizant of the policy considerations in play. In this court's experience, the Kentucky state court is likely to focus on the liability disputes between the parties before turning to the question of insurance coverage. This could substantially prolong Cincinnati's involvement in the litigation, costing time and resources that could be spared by a more expeditious ruling from this court.

This case is distinguishable from *Bituminous Cas. Corp. v. J & L Lumber Co., Inc.* in two significant ways. 373 F.3d 807 (6th Cir. 2004). First, in *Bituminous*, not all of the state court defendants were made party to the federal declaratory judgment action. *Id.* at 814. Thus, unlike in this case, the federal court's ruling would not have been binding on all parties with outstanding state court claims against the plaintiff insurance company. Second, the issue to be resolved in *Bituminous* was "a fact-based, and [ ] very close, question of state law." *Id*. at 813. District courts are better situated to settle controversies between the parties when "the issue involved [is] a legal, not a factual dispute, and thus. . . [does] not require the district court to inquire into matters being developed through state court discovery." *Scottsdale*, 513 F.3d at 557. There is no fact-based dispute before the court in this case. A judgment has already been entered in Kentucky criminal court, finding that Orten operated his vehicle recklessly in the July 4, 2015 crash. The only question this court faces is whether, as a matter of law, Cincinnati owes coverage under the Policies for Orten's reckless operation of his vehicle.

This court can resolve in a binding manner the legal issue of coverage between Cincinnati and its insured. A ruling here could prevent unnecessary expense and effort on behalf of Cincinnati in potentially drawn-out state court litigation. And there is no risk of conflicting

8

factual determinations between this court and the Kentucky state court. Thus, this factor weighs in favor of exercising jurisdiction.

### B. Will the declaratory action clarify the legal relations between the parties?

This factor is closely related to, and often considered in conjunction with, the first factor. *See Travelers Indem. Co. v. Bowling Green Prof. Assocs.*, *PLC*, 495 F.3d 266, 271 (6th Cir. 2007). "Indeed, it is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue." *Scottsdale*, 513 F.3d at 557. In *Scottsdale*, the Sixth Circuit settled a longstanding ambiguity as to how this factor should be analyzed in insurance cases, finding that a federal district court should focus on the legal issue of indemnity in determining whether it can clarify legal relations between the parties:

> The requirement that the judgment clarify the legal relationships of the parties is based upon our desire for the declaratory judgment to provide a final resolution of the discrete dispute presented. While the parties may have other tortious or contractual relationships to clarify in state court, our concern in considering the second *Grand Trunk* factor in such cases is with the ability of the federal declaratory judgment to resolve, once and finally, the question of the insurance indemnity obligation of the insurer. Thus, we focus only on whether a federal declaratory judgment will clarify the legal relationships presented to the district court.

*Id*. This court is appropriately situated to determine the issue of Cincinnati's coverage obligations under the Policies and can therefore clarify the legal relations between the parties. Thus, this factor weighs in favor of exercising jurisdiction.

### C. Is the declaratory remedy being used merely to "provide an arena for res judicata?"

The parties agree that Cincinnati did not file suit in this court for the purpose of procedural fencing. Cincinnati filed this action within days of receiving notification of the Kentucky criminal judgment against Orten. Cincinnati was not brought into the Kentucky state

9

court litigation until over a month after it had filed suit in this court. The Sixth Circuit has held that, when no improper motive prompted the action in question, this factor is neutral. *See Travelers*, 495 F.3d at 272. The court therefore will not consider this factor as favoring either exercise or declination of jurisdiction.

### D. Will the action increase friction between the federal and state courts?

With respect to the fourth *Grand Trunk* factor, the Sixth Circuit has offered three sub-factors for consideration:

(1) whether the state court's resolution of the underlying factual issues is important to an informed resolution of the federal case;

(2) whether the trial court is in a better position to evaluate those factual issues than is the federal court; and

(3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common law or statutory law dictates a resolution of the declaratory judgment action.

*Id*. at 271. As addressed with regard to the first factor, there are no outstanding factual issues for the state court to decide which would bear upon this court's resolution of Cincinnati's declaratory judgment action. In situations such as this, where "the liability issues being determined in the state court proceeding [are] legally, [ ] not factually, distinct from the issues of policy interpretation which are central to the federal declaratory judgment action[,]" the first two sub-factors counsel in favor of the federal court exercising jurisdiction. *See Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1067 (6th Cir. 1987).

In analyzing the third sub-factor, the Sixth Circuit has found that state courts are generally in a better position to evaluate insurance contracts. *See Travelers*, 495 F.3d at 273. This is because "[t]he states regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the

10

foundation of such regulation." However, this presumption triggers only when state courts are applying the public policies that inhere in their own state's laws. To determine what law governs the Policies, this court must apply Tennessee's choice-of-law rules, which follow the law of *lex loci contractus* in contract disputes. *See Vantage Tech v. Cross*, 17 S.W. 3d 637, 650 (Tenn. Ct. App. 1999). Insurance contracts are "governed by the same rules of construction used to interpret other contracts." *Travelers Indem. Co. of Am. v. Moore & Assocs., Inc.*, 216 S.W.3d 302, 305 (Tenn. 2007). Under *lex loci contractus*, "a contract is presumed to be governed by the law of the jurisdiction in which it was executed absent a contrary intent." *Vantage Tech*, 17 S.W. 3d at 637 (citing *Ohio Cas. Ins. Co. v. Travelers Indem. Co.*, 493 S.W.2d 465, 467 (Tenn.1973)). Contrary intent is shown when:

> the contract is to be performed in another state and the parties envision performance in accordance with that state's laws. The primary consideration to be made in determining whether the exception applies is whether the contract was made "in good faith with reference to the law of some other state," or "with [a] view to" the other state. The intent of the parties in this regard is to be "gathered from the terms of the instruments and all of the attending circumstances."

*In re Estate of Davis*, 184 S.W.3d 231, 234–35 (Tenn. Ct. App. 2004) (internal citations omitted). This approach is consistent with the Restatement, which offers the following guidance for insurance cases:

> The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship ... to the transaction and the parties, in which event the local law of the other state will be applied.

Restatement (Second) of Conflicts of Law § 193.

The record in this case demonstrates a clear understanding by the parties that the principal location of the insured risk was Tennessee. The named insured on the Policies is Orten's business, which was located in Tennessee. The declarations page includes the Tennessee address of Orten's business. The only addresses listed in the schedule of locations in the Policies are Tennessee addresses. The proof of insurance cards issued for the vehicle Orten was driving in the July 4, 2015 crash list a Tennessee address for the automobile insurance policy. Tennessee Uninsured Motorist Coverage was provided for the vehicle under the Policies. The vehicle itself was registered in Tennessee. Taken together, the circumstances of the contractual arrangement between Cincinnati and Orten's business evince a "view to" Tennessee. The court thus finds that Tennessee law governs the contract. Because the Kentucky state court does not have an interest in identifying and applying the public policies of Tennessee law, the third sub-factor favors exercise of jurisdiction. As a result, all three sub-factors, and consequently the fourth *Grand Trunk* factor, support exercising jurisdiction.

**E. Is there an alternative remedy which is better or more effective?**

The Sixth Circuit rejects an overarching approach to the fifth *Grand Trunk* factor. "[R]ather than applying a general rule, [ ] inquiry on this factor must be fact specific, involving consideration of the whole package of options available to the federal declaratory plaintiff." *Scottsdale*, 513 F.3d at 562. A district court should "deny declaratory relief if an alternative remedy is better or more effective." *Grand Trunk v. W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984).

The court sees no alternative remedy that is better or more effective. The Kentucky court is not better situated than this court to resolve questions of Tennessee state law. And, as noted previously, there are concerns that Cincinnati could be dragged along for a long and expensive

ride before the issue of its coverage obligations is determined in the state court litigation. The Sixth Circuit has acknowledged similar concerns in past cases: "[W]e are not convinced that an action for indemnity, instituted only after the insurance company has provided a defense which it may not have been obligated to render, is in every case a 'superior remedy.'" *Green*, 825 F.3d at 1067. Because Cincinnati has no superior options to this action, the court finds that the fifth *Grand Trunk* factor supports an exercise of jurisdiction.

### F. Balancing the factors

The Sixth Circuit has "never indicated how these *Grand Trunk* factors should be balanced." *Scottsdale*, 513 F.3d at 563. Nonetheless, it is evident that the balance in this case tilts toward an exercise of jurisdiction. Having found that the four factors relevant to this dispute all favor exercising jurisdiction, the court concludes that federal adjudication of Cincinnati's declaratory judgment action is appropriate.

## **CONCLUSION**

For the foregoing reasons, the defendants' Motion is **DENIED**.

It is so **ORDERED**.

Enter this 30th day of October 2017.

_____
ALETA A. TRAUGER
United States District Judge